| 142 | 645 |
| 56a | 595 |
| 142 | 645 |
| 70a | 532 |
| 142 | 645 |
| 72a | 519 |
| 142 | 645 |
| 174 | 623 |
| 142 | 645 |
| 177 | 139 |
| 142 | 645 |
| 208 | 401 |

John Wilson

*v.*

J. N. Bondurant *et al.*

Filed at *Springfield November 2, 1892.*

1. Drainage—*artificial increase of volume of water in natural channel.* No one has the right to complain that the volume of water in natural channels is temporarily increased by artificial drainage of the land which naturally drains into such natural channels.

2. A party who drains the water from his land into the natural channels across the lands of others, in which it would have flowed, only less speedily, without any artificial drainage, does not do so by virtue of any license or agreement, but by virtue of his ownership of the land.

3. Same—*bill to enjoin increasing the natural flow.* A bill to enjoin a defendant from draining his land upon the premises of complainant, which contains no allegation that the defendant is proposing or intending, or that the necessary effect of what he has done in making ditches will be, to drain water upon complainant's land otherwise than as it flows according to nature, is bad on demurrer, and will not authorize an injunction.

4. To authorize a land owner to enjoin another from draining his land by throwing the water upon the land of the former, it is indispensable that the party shall allege and prove a clear and legal or equitable right, and a well grounded apprehension of immediate injury to that right. If, upon the allegations or proofs, there shall be a reasonable doubt in either respect, an injunction will be denied.

5. And when such bill fails to allege that the defendant is intending to re-open the ditches after their being filled up by the complainant, it will be presumed that he will not do so. After such ditches have been closed, any drainage of water across his land will presumptively be only in natural channels, and of such water as naturally flows thereover.

6. Same—*act of 1889, construed.* The act of 1889, declaring certain drains legal, etc., does not restrict or abridge the rights of drainage as they existed at the common law. Its sole purpose and effect is to enlarge those rights.

7. The act of 1889, entitled "An act declaring legal drains heretofore or hereafter constructed by mutual license, consent or agreement, by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be with-

drawn," does not authorize the filing of a bill for injunction, when such bill could not have been filed under the principles of the common law.

8. Section 4 of the act of 1889, relating to drains and ditches, is to be read simply as a limitation upon the language of section 1.

APPEAL from the Appellate Court for the Third District;— heard in that court on writ of error to the Circuit Court of Ford county; the Hon. ALFRED SAMPLE, Judge, presiding.

This is a bill in equity for an injunction, by John Wilson, against J. N. Bondurant and the commissioners of highways of the town of Wall in Ford county. It is, among other things, alleged in the bill, that complainant is the owner in fee of the south-east quarter of section 24, town 24, north, range 9, east of the third principal meridian, in said county; that along the east side thereof, running north and south, is a highway, on the line between the counties of Ford and Iroquois; that said highway is under the jurisdiction and control of, and allotted to, the commissioners of highways of the town of Wall, in said county of Ford; that J. N. Bondurant owns the eighty acres in Iroquois county lying next east of the complainant's said land; that N. P. Busch owns the land adjoining complainant on the north; that in 1883 complainant dug an open ditch from a point about the center of his east line, northwesterly, to about the center of his north line, connecting with an open drain dug by said Busch, in a northeasterly direction, to Spring creek, in said Iroquois county; that shortly after complainant dug his said ditch, said town of Wall, by its commissioners, graded said public highway, and dug a ditch on the west side of it, so that the water on the said highway, and that coming on to the highway from Bondurant's land by means of a tile drain into said highway, (which was made without the consent of said commissioners,) ran said water into complainant's ditch on his land; that no agreement in writing was ever made between the complainant, Busch or Bondurant, or their

grantors, or the authorities of the town of Wall, in regard to said ditches, each ditch or tile drain being made by the owners of the premises respectively, of his own motion, and were joined without any writing or agreement of any kind; that the authority so to drain through complainant's ditch was simply by use or acquiesence; that said Busch, about June 1, revoked any license the complainant or said town or said Bondurant, or their grantors, may have had, by filling the ditch across his land; that on June 30, 1890, the complainant revoked all license heretofore granted, if any, to said town and said Bondurant to use said ditch across his land, by filling it up, and by giving said commissioners and Bondurant notice, in December, 1889, that he had revoked such license. The prayer of the bill is, that on the hearing, the act of the complainant in filling up said ditch and revoking said license should be approved and affirmed, and that the defendants should be restrained and enjoined from draining the water on said highway, and that coming from the land of said Bondurant, into complainant's said ditch, and from interfering with the filling up of said ditch by the complainant, and that said commissioners be required to fill up any ditch they have made or that has at any time been made in said highway, tapping complainant's said ditch.

There was a general demurrer to the bill, which the court sustained, and decreed that the bill be dismissed. This decree was affirmed, on appeal to the Appellate Court for the Third District, and the case is here by appeal from that judgment of affirmance.

Messrs. KAY & KAY, and Mr. N. J. PILLSBURY, for the appellant.

Messrs. MORRIS & HOOPER, and Messrs. MOFFIT & DAY, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The contention of appellant is, that the facts alleged in the bill bring him within the letter and spirit of the act approved June 4, 1889, entitled "An act declaring legal, drains heretofore or hereafter constructed by mutual license, consent or agreement, by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be withdrawn." (Laws of 1889, p. 116.) But there is nothing in that act authorizing the filing of a bill for injunction where such bill could not have been filed under the principles of the common law, and under those principles it is indispensable that the party shall allege and prove a clear legal or equitable right, and a well grounded apprehension of immediate injury to that right. (High on Injunctions, sec. 7; *Kean* v. *Colt,* 1 Halst. Ch. 365.) If, upon the allegations or proofs, there shall be a reasonable doubt in either respect, injunction will be denied. *Thornton* v. *Roll et al.* 118 Ill. 350.

There is no allegation in this bill that the defendants are proposing or intending, or that the necessary effect of what they have done in making ditches will be, to drain water upon the land of appellant otherwise than as it flows according to nature, and no one has a right to complain that the volume of water in natural channels is temporarily increased by artificial drainage of the lands which naturally drain into such natural channels. (*Peck* v. *Herrington,* 109 Ill. 610; *Drainage District* v. *Drainage District,* 130 id. 265; *Kankakee and Seneca Railroad Co.* v. *Horan,* 131 id. 288.) There is no allegation that the defendants are intending to re-open the ditch which it is alleged appellant has closed, and in the absence of allegation in that respect the presumption is that they will not do so. And this ditch being closed, any drainage of water across appellant's land will, presumably, be only in natural channels, and of such water as naturally flows thereover.

The statute referred to does not restrict or abridge the rights of drainage as they existed at common law. Its sole purpose and effect is to enlarge those rights. Thus, the first section provides, that "whenever any open ditch has been or shall be constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said owners, or where the owner or owners of adjoining or adjacent lands shall, by mutual consent, etc., be permitted to connect a drain with another so constructed, or where the owner of lower lands has connected or shall connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein." Section 2 provides, "that no one of such owners may authorize another person to connect with such drain without consent of all parties interested, and any drain so connected without such consent shall be unlawful, and any person interested may, by bill in chancery, compel such drain to be filled, and may also have his action for damages." Section 3 provides, that "none of the parties interested in such continuous drain may fill the same or in any manner obstruct the flow of water therein, and that the license, consent or agreement mentioned need not be in writing, but may be by parol, and may be inferred from acquiescence of the parties in the construction of the drain." Section 4 reads thus: "This act shall not be held to apply to any cause now pending in any court of this State, nor deprive any party of the right he may have, under existing laws, to revoke any parol license heretofore granted to construct any such drain upon, across or over his lands, provided such right be exercised and suit commenced to enforce the same within one year from the time this act takes effect, but if not thus exercised and suit brought within one year, he shall be forever barred from thereafter revoking such license."

The fourth section professes to be, and must therefore be read, simply, as a limitation upon the language of section 1. Very plainly the allegations in the bill make no case under either of these sections, for a party who drains the water from his land into the natural channels across the lands of others in which it would have flowed, only less speedily, without any artificial drainage, does not do so by virtue of any license or agreement, but by virtue of his ownership of the land he drains. His right to thus drain is incidental to the ownership of the soil, and is as absolutely his as is his right to devote the soil to cultivation.

The judgment is affirmed.                    *Judgment affirmed.*